**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **3D SCAN GUIDE LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 4:23-cv-01458** |
| | ) | |
| **NATIONAL DENTEX LABS LLC,** | ) | **Jury Demanded** |
| | ) | |
| **Defendant.** | ) | |

---

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE**
**TO STATE A CLAIM FOR RELIEF UNDER FED. R. CIV. P. 12(B)(6)**

---

## I.    INTRODUCTION

Plaintiff's complaint should be dismissed with prejudice under Rule 12(b)(6) because every claim of the patent-in-suit that is plausibly asserted is a new reissue claim that is invalid as a matter of law under 35 U.S.C. § 251.[1] These new reissue claims are invalid because they impermissibly recapture subject matter that was previously surrendered during prosecution of the original patent, and therefore violate what is known as "the rule against recapture." This rule prohibits a patentee from obtaining broader reissue claims that recapture subject matter surrendered during the original prosecution. That is precisely what happened here.

The asserted patent, U.S. Patent No. RE47,368 (the "'368 Patent"), is directed to a template for use with an instrument to drill a hole in a surface at a desired location, which may include one or more "radiographic markers." The asserted '368 Patent is a reissue of U.S. Patent No. 9,050,665

---

[1] In a related case, *3D Scan Guide LLC v. Institut Straumann AG et al.*, Case No. 6:21-CV-00459-ADA (W.D. Tex.), Judge Alan D. Albright denied Institut Straumann's Motion to Dismiss as being premature.  (ECF No. 38.)  Defendant respectfully disagrees, and believes this matter is ripe for consideration by the Court, as a matter of law, for the reasons stated herein.

(the "'665 Patent"). During prosecution of the original '665 Patent, the applicant surrendered coverage of templates that do not have a "radiographic marker." Specifically, after originally submitting claims that did not require the template to have a "radiographic marker," the applicant amended the claims, in an attempt to overcome a prior art rejection, to require the template to have a "radiographic marker," and argued this feature distinguished the cited prior art. The '665 Patent eventually issued with ten claims (claims 1-10), all of which include the amended limitation that requires the template to have a "radiographic marker."

About two years later, the patentee applied for a broadening reissue of the '665 Patent. However, during prosecution of the reissue application, the patentee obtained new, broader reissue claims that impermissibly recaptured the very subject matter previously surrendered. Specifically, the reissued '368 Patent issued with two new independent claims (claims 11 and 19) and several dependent claims (claims 12-17 and 21-22) that do not require the template to have a "radiographic marker." Although independent claim 11 originally included this limitation, the patentee removed it from claim 11 and moved it to a new dependent claim after substantive prosecution ended. As a result, independent claims 11 and 19, and dependent claims 12-17 and 21-22, are broader than claims 1-10 of the original '665 Patent, and impermissibly recapture the previously surrendered coverage of templates that do not have a "radiographic marker." Thus, claims 11-17, 19 and 21-22 violate the rule against recapture and are invalid as a matter of law under 35 U.S.C. § 251.

Because claims 11-17, 19, and 21-22 are invalid, the complaint fails to state any claim for relief and should be dismissed with prejudice under Rule 12(b)(6). Invalid claims 11-17, 19 and 21-22 are the only claims that the complaint can even possibly be considered to plausibly assert. The complaint does not include any plausible infringement allegation for any of the other claims (claims 1-10, 18 and 20), all of which require the template to have a "radiographic marker." The

complaint alleges that "at least claim 11" is infringed, without specifically referencing any other claim. Moreover, the complaint does not allege that the accused products have a radiographic marker (they do not). Therefore, unless plaintiff can demonstrate that it has a good faith basis to amend its complaint to plausibly allege infringement of any of claims 1-10, 18 or 20 (which it cannot do), a finding that claims 11-17, 19 and 21-22 are invalid means that the complaint fails to state any claim for relief and should be dismissed with prejudice under Rule 12(b)(6).

## II.    LEGAL STANDARDS

"Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Irby v. Hinkle*, 2020 WL 4504701, at *3 (S.D. Tex. Aug. 5, 2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)). Therefore, where a motion to dismiss a patent infringement complaint turns on a question of law, a court may resolve it at the Rule 12(b)(6) stage. *See, e.g., Lighthouse Consulting Grp., LLC v. BB&T Corp.*, 476 3 F.Supp.3d 532, 537 (W.D. Tex. 2019) (Albright, J.) ("A court may grant 12(b)(6) dismissals based on [prosecution history] estoppel," which presents "questions of law for the court.") (citations omitted); *see also Amgen Inc. v. Coherus Biosciences, Inc.*, 931 F.3d 1154, 1159-61 (Fed. Cir. 2019) (affirming dismissal of complaint under Rule 12(b)(6) based on prosecution history estoppel).

A reissue claim that impermissibly recaptures subject matter previously surrendered during prosecution of the original patent violates the rule against recapture and is therefore invalid under 35 U.S.C. § 251. *In re Mostafazadeh*, 643 F.3d 1353, 1358 (Fed. Cir. 2011). Whether a reissue claim is invalid under § 251 because it violates the recapture rule is a question of law for the court. *In re Youman*, 679 F.3d 1335, 1343 (Fed. Cir. 2012). Therefore, a court can dismiss a complaint under Rule 12(b)(6) if the asserted claims are invalid under § 251 because they violate the rule against recapture. *Cf. Amgen*, 931 F.3d at 1559-61. When reviewing a motion to dismiss, a court

"must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss," including "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citations omitted).

Courts may take judicial notice of information found on agency websites. *See Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam). Particularly, a court may take judicial notice of a patent and its prosecution history available at the U.S. Patent and Trademark Office website. *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) ('On a motion for judgment on the pleadings, however, the court may consider 'matters of public record," such as '[p]rosecution histories'); *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 898 n.3 (Fed. Cir. 2019) ('The prosecution history is part of the intrinsic record of the patent' and 'thus subject to judicial notice and may be considered in our de novo review of the district court['s]' ruling on a motion to dismiss). A court may consider the prosecution history in deciding a motion to dismiss. *See Amgen*, 931 F.3d at 1157-61 (affirming dismissal based on prosecution history estoppel).

## III.   STATEMENT OF FACTS

### A.   Plaintiff's Complaint and the Asserted '368 Patent

Plaintiff 3D Scan Guide LLC's ("Plaintiff") complaint (ECF No. 1) alleges that defendant National Dentex Labs LLC ("Dentex") infringes the '368 Patent (U.S. Patent No. RE47,368) (Ex. A).[2] The '368 Patent is a reissue of the '665 Patent (U.S. Patent No. 9,050,665) (Ex. B) and is generally directed to "[a] template for use with an instrument to drill a hole in a surface at a desired

---

[2] "Ex. __" refers to the Exhibits to the Declaration of Lucas T. Elliot filed herewith. Citations to the exhibits in this motion are to the page stamp affixed to the lower right corner of the page, except that citations to patent exhibits are to the column and line number in C:L format.

location." (Ex. A at Abstract.) The template may have one or more "radiographic markers." (*Id*. at 7:6-13.) Figure 3 is described as an "embodiment of the inventive template." (*Id*. at 4:42-43).

The '368 Patent has 22 claims, all of which recite a "template." (*Id*. at 9:38-12:18.) Claims 1-10 issued in the '665 Patent and were not amended during the reissue. Claims 11-22 are new reissue claims. Original claims 1-10 and reissue claims 18 and 20 include a limitation that requires the template to have a "radiographic marker." Reissue claims 11-17, 19 and 21-22 do not. The only claim specifically asserted in the complaint is claim 11, which does not include the "radiographic marker" limitation. (ECF No. 1, ¶¶ 22-44.) The complaint also includes conclusory allegations that "one or more claims" of the '368 Patent are infringed, without identifying any of these claims, much less why they are infringed. (*Id*., ¶¶ 38, 42.) The complaint does not allege that any of the accused products has a radiographic marker. (*See generally id*.)

### B.     The Prosecution of the Original '665 Patent and the Reissue '368 Patent

As explained below, the applicant surrendered coverage of templates not having a "radiographic marker" during the original prosecution of the '665 Patent, and then impermissibly recaptured this surrendered subject matter during the reissue prosecution of the '368 Patent.[3]

### i.     The Applicant Surrendered Coverage of Templates That Do Not Have a "Radiographic Marker" During the Original Prosecution.

During the prosecution of the original application that issued as the '665 Patent, the applicant surrendered coverage of templates that do not have a "radiographic marker." The original application (No. 11/438,217), filed on May 22, 2006, had 37 claims, including device claims to a "template" and method claims. (Ex. C-1 at 25-34.) After the Examiner issued a "restriction requirement" under 35 U.S.C. § 121 (Ex. C-2 at 3-8), the applicant elected "the species" of Figure

---

[3] The prosecution history excerpts discussed below are attached as exhibits as downloaded from the USPTO website. As explained above, the Court may take judicial notice of these documents.

3 (Ex. C-3 at 1). After several rounds of rejections and responses, the Examiner issued an Office Action on October 2, 2013 (Ex. C-5), which rejected all of the pending claims (*Id*. at 2.)

At that time, all the pending claims (claims 1-2, 5-10, 23 and 39-41) recited a "template" with various features. (Ex. C-4 at 3-6.) Claims 1 and 23 were independent, claims 2, 5-10 depended from claim 1, and claims 39-41 depended from claim 23. (*Id*.) None of the claims required the template to have a "radiographic marker," except for dependent claim 41. (*Id*. at 6.) In the Office Action on October 2, 2013 (Ex. C-5), the Examiner rejected claims 1-2, 5-10, 23 and 40, which did not include the "radiographic marker" limitation, as anticipated by the prior art Swaelens reference (WO2004/075771). (*Id*. at 4-6.) The Examiner also rejected claim 41, which included the "radiographic marker" limitation, as obvious over Swaelens and the Conley reference (U.S. Patent No. 5,989,025), and stated that "Swaelens discloses the claimed invention except for wherein said body includes a radiographic marker such that said body comprises a radiographic template for subsequent removable portions." (*Id*. at 7-8 (emphasis added).)

In response to this Office Action in which the Examiner stated that Swaelens did not disclose a "radiographic marker," the applicant filed an Amendment on March 3, 2014 (Ex. C-6) in which he added that very feature to both independent claims, and thereby surrendered coverage of templates that do not have a "radiographic marker." Specifically, the applicant amended independent claims 1 and 23 to add a limitation that required the template to have a "radiographic marker," along with other amendments. (*Id*. at 3, 5.) The applicant underlined the added "radiographic marker" limitations in amended claims 1 and 23. (*Id*.) In the Remarks, the applicant argued that "[a]mong the limitations of claim 1 not present in Swaelens are a template for use with an instrument for penetrating an uncut irregular surface comprising … a radiographic marker arranged in the removable portion." (*Id*. at 7.) The applicant further argued that "Swaelens fails to

6

disclose the claimed radiographic template with removable sections or modules that contain radiographic markers … ." (*Id*. at 9 (emphasis added).) Additionally, the applicant argued that independent "[c]laim 23 is allowable for at least the same reason as claim 1 discussed above." (*Id*.) By making these amendments and arguments, the applicant surrendered coverage of templates that do not have a "radiographic marker."

Despite these amendments, the Examiner issued another Office Action in which he again rejected independent claims 1 and 23 (and other claims) based on Swaelens and Conley. (Ex. C-7 at 2, 4-7.) In response, the applicant amended claims 1 and 23 again, including to specify additional components of the template (an "inner piece" and an "outer piece" with "threaded" surfaces (referred to herein as the "threaded" limitation)). (Ex. C-8 at 3, 5.)

After these amendments, the Examiner allowed all the pending claims. (Ex C-9.) The '665 Patent issued on June 9, 2015 with claims 1-10. Application independent claims 1 and 23 issued as independent claims 1 and 8. Both independent claims (and therefore all the dependent claims) included the "radiographic marker" limitation. (Ex. B at 9:11-38, 10:8-33.)

### ii.     The Patentee Impermissibly Recaptured the Previously Surrendered Coverage of Templates That Do Not Have a "Radiographic Marker" During the Reissue Prosecution.

As explained below, during the reissue prosecution of the asserted '368 Patent, the patentee impermissibly recaptured the coverage of templates without a "radiographic marker" that the applicant previously surrendered during the original prosecution.

The reissue application (No. 15/615,417), filed on June 6, 2017, included a preliminary amendment that added new claims 11-22, of which claims 11 and 19 were independent. (Ex. D-1 at 22-24.) Independent claim 11 included the "radiographic marker" limitation of claims 1-10 that had been added during the original prosecution, but independent claim 19 did not. (*Id*.) Therefore, from the outset, claim 19 covered templates without a "radiographic marker," which had been

surrendered during the original prosecution. Claims 11 and 19 also did not include the "threaded" limitation that had been added during the original prosecution. (*Id.*)[4]

In an Office Action dated December 7, 2017, the Examiner rejected all the claims 11-22 as anticipated by Swaelens. (Ex. D-2 at 2, 9-11.) He also rejected claims 11-22 for violating the rule against impermissibly recapturing subject matter surrendered during the original prosecution under 35 U.S.C. § 251, because, inter alia, independent claims 11 and 19 omitted the "threaded" limitation and claim 19 omitted the "radiographic marker" limitation. (*Id.* at 6-9.)[5]

In an Amendment filed on March 6, 2018, the patentee responded to the anticipation rejection by arguing, inter alia, that Swaelens did not disclose a "radiographic marker arranged in the removeable portion" as recited in claim 11. (Ex. D-3 at 9 (emphasis added).) In response to the recapture rejections, the patentee asserted that, inter alia, claims 11 and 19 were directed to different embodiments than the Figure 3 embodiment of the '665 Patent claims. (*Id.* at 8.)

In an Office Action dated April 20, 2018, the Examiner stated that claims 11-13 and 16-18 were directed to the Figure 3 embodiment. (Ex. D-4 at 5-6.) As a result of this constructive election, the Examiner withdrew claims 19-21 as directed to a non-elected invention. (*Id.* at 2, 7.) Having withdrawn claim 19, the Examiner did not maintain or mention the prior recapture rejection based on the omission of the "radiographic marker" limitation from claim 19. (*Id.* at 8-11.) The Examiner did maintain the anticipation and recapture rejections of claims 11-13 and 16-18. (*Id.* at 9-13.) However, because claim 11 included the "radiographic marker" limitation, the recapture rejection was based only on the omitted "threaded" limitation. (*Id.*)

---

[4] As to the alleged "error" in the original '665 Patent justifying the reissue (see 35 U.S.C. § 251), the inventor stated in his declaration merely that he "claimed less that [sic] he has a right to as evidenced by new claims 11-22." (Ex. D-1 at 26.)
[5] The Examiner also declared the reissue declaration defective for not properly identifying an "error" in the original patent. (*Id.* at 5-6.)

The patentee filed another Amendment on June 20, 2018. (Ex. D-5.) Despite the withdrawal of claims 19-22, the patentee amended not only claim 11 but also claim 19 to add a variation of the "threaded" limitation, in which the "outer piece" has a "threaded outer surface." (*Id*. at 4-6.) The patentee argued that, inter alia, the "radiographic marker" limitation in claim 11 and this revised "threaded" limitation in claims 11 and 19 distinguished Swaelens. (*Id*. at 9.)

In response to the recapture rejection, the patentee changed course and stated that claims 11 and 19, as amended, were directed to the Figure 3 embodiment after all, but "with the inner piece 136 being unthreaded." (*Id*. at 8.) The patentee did not address the omission of the "radiographic marker" limitation from claim 19, because the pending recapture rejection was based only on the omission of the original "threaded" limitation from claim 11.

On July 10, 2018, the Examiner issued an Advisory Action indicating that the patentee's response "ha[d] overcome" the anticipation and recapture rejections. (Ex. D-6 at 3.) Nevertheless, the Examiner rejected all the claims due to the defective declaration (see above), which had still not been corrected. (Ex. D-6 at 3.) However, the Examiner did not explain how the patentee had overcome any of these rejections, including the earlier recapture rejection of claim 19 based on the omitted "radiographic marker" limitation, which the patentee had not addressed in its most recent response.

Having "overcome" the rejections, the patentee filed, on October 19, 2018, a Request for Continued Examination, together with an Amendment After Final, in which it amended claim 11 to remove the "radiographic marker" limitation that had been in this claim since it had been originally submitted with the reissue application. (Ex. D-7 at 16.) The patentee also presented new claim 25, which depended from claim 11 and added the "radiographic marker" limitation that had been removed from claim 11. (*Id*. at 18.) In effect, the patentee removed the "radiographic marker"

limitation from independent claim 11 and moved it to new dependent claim 25. By removing the "radiographic marker" limitation from claim 11 at this late stage, the patentee impermissibly recaptured in claim 11 the previously surrendered coverage of templates that do not have a "radiographic marker," just like it had already done in claim 19, which had never included the "radiographic marker" limitation.

In the accompanying Remarks, the patentee did not note the removal of the "radiographic marker" limitation from claim 11, contrary to the requirement that when a new reissue claim such as claim 11 is amended, the "applicant must point out what is changed [from the previous version of the claim] in the 'Remarks' portion of the amendment." MPEP § 1453.V.D. Instead, the patentee stated only that "[b]y this Amendment, claims 11 and 19 have been amended and claims 23-25 are added." (Ex. D-7 at 19.) The patentee also stated that "[t]he rejections under 35 U.S.C. § 251 and 35 U.S.C. § 102(b) have been overcome," but did not explain how amended claim 11 (or claim 19 for that matter) overcame the rationale of the previous recapture rejection given that now both claims omitted the "radiographic marker" limitation. (*Id.*)[6]

After these amendments, the Examiner allowed all of the pending claims. (Ex. D-8.) The Examiner made no mention of the omission of the "radiographic marker" limitation in claims 11 and 19 in his reasons for allowance. (*Id.* at 7.) The reissue '368 Patent issued on April 20, 2019, with original claims 1-10 and new reissue claims 11-22. (Ex. A at 9:38-12:18.) Reissue application independent claims 11 and 19 issued as claims 11 and 19. New reissue claims 11-17, 19 and 21-22 omit the "radiographic marker" limitation in original claims 1-10. As a result, these new reissue

---

[6] The inventor also submitted an amended declaration, which described as the "error upon which reissue is based" that new claims 11-22 did not recite the original "threaded" limitation in original claim 1, which the inventor asserted "is not necessary for patentability." (Ex. D-7 at 3.) The declaration did not mention the "radiographic marker" limitation. (*Id.*)

claims impermissibly recaptured the previously surrendered coverage of templates without a "radiographic marker." Reissue dependent claims 18 and 20 include the "radiographic marker".

This surrender and subsequent recapture can be seen in Appendix A, which sets forth the text of original claims 1 and 23 submitted in the '665 Patent application (which did not include the "radiographic marker" limitation), issued claims 1 and 8 of the '665 Patent (which did), and reissue claims 11 and 19 of the '368 Patent (which did not).

## IV.    ARGUMENT

### A.    Reissue Claims 11-17, 19 and 21-22 Are Invalid Under 35 U.S.C. § 251 Because They Violate the Rule Against Impermissibly Recapturing Previously Surrendered Subject Matter.

As explained below, reissue claims 11-17, 19 and 21-22 of the '368 Patent are invalid under 35 U.S.C. § 251 as a matter of law because all of these claims violate the rule against recapture. Specifically, by omitting the "radiographic marker" limitation that was added to original issued claims 1-10 during prosecution of the original application, these new reissue claims 11-17, 19 and 21-22 impermissibly recaptured the coverage of templates without "radiographic markers" that was surrendered during the original prosecution.

Although a patentee may seek to reissue claims of a patent, the patentee may not obtain a reissue claim that impermissibly recaptures subject matter previously surrendered during prosecution of the original patent. *Mostafazadeh*, 643 F.3d at 1358. A reissue claim that impermissibly recaptures previously surrendered subject matter violates the rule against recapture and is therefore invalid under § 251. *Id*. Whether a reissue claim is invalid under § 251 because it violates the rule against recapture is a question of law for the court. *Youman*, 679 F.3d at 1343.

The Federal Circuit has articulated the following three-step test for courts to follow in determining whether a reissue claim violates the rule against recapture and is therefore invalid under § 251: The first step is to determine whether and in what aspect the reissue claims are broader

than the patent claims. The second step is to determine whether the broader aspects of the reissued claim related to surrendered subject matter. Finally, the court must determine whether the reissued claims were materially narrowed in other respects to avoid the recapture rule. *Pannu v. Storz Instruments, Inc.*, 258 F.3d 1366, 1371 (Fed. Cir. 2001) (quotation and citations omitted).

As explained below, under this three-step test, reissue claims 11-17, 19 and 21-22 violate the rule against recapture as a matter of law and are invalid.

### i. Step 1 – Reissue Claims 11-17, 19 and 21-22 of the '368 Patent Are Broader Than Claims 1-10 of the '665 Patent Because They Omit the "Radiographic Marker" Limitation of Claims 1-10.

The first step of the recapture test is "to determine whether and in what 'aspect' the reissue claims are broader than the patent claims." *Pannu*, 258 F.3d at 1371; *see also Mostafazadeh*, 643 F.3d at 1358. "[A] reissue claim that deletes a limitation or element from the patent claims is broader in that limitation's aspect." *In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir. 1997).

This first step of the recapture test is satisfied here. Reissue independent claim 11 (and dependent claims 12-17) and reissue independent claim 19 (and dependent claims 21-22) of the '368 Patent are plainly broader than claims 1-10 of the '665 Patent because these reissue claims omit the "radiographic marker" limitation in claims 1-10. *See Clement*, 131 F.3d at 1468. Claims 1-10 are limited to templates that have a "radiographic marker," but claims 11-17, 19 and 21-22 are broader because they encompass templates that do not have a "radiographic marker." Therefore, under the first step of the recapture test, reissue claims 11-17, 19 and 21-22 are broader than claims 1-10 with respect to whether the template must have a "radiographic marker."

### ii. Step 2 – The Broader Aspect of Claims 11-17, 19 and 21-22 of the '368 Patent Relates to the Subject Matter Surrendered During the Prosecution of the '665 Patent.

The second step of the recapture test is to "determine whether the broader aspects of the reissue claims relate to surrendered subject matter." *Mostafazadeh*, 643 F.3d at 1358 (quotation

omitted). "[T]o determine what the applicants surrendered," the Court must "look to the change of scope between the original and patented claim [] and the accompanying arguments applicants made during the original prosecution" to overcome a prior art rejection. *Youman*, 679 F.3d at 1344.

This second step of the recapture test is satisfied here because the "broader aspect" of reissue claims 11-17, 19 and 21-22 relates to the subject matter surrendered during the original prosecution. As explained above, and as shown in Appendix A, during the original prosecution, the applicants surrendered coverage of templates that do not have "radiographic markers." Originally submitted independent claims 1 and 23 did not require the template to have a "radiographic marker." After those claims were rejected as anticipated by the Swaelens reference, the applicant amended claims 1 and 23 to require the template to have a "radiographic marker" and relied on that new limitation to distinguish Swaelens. Amended claims 1 and 23 ultimately issued as independent claims 1 and 8 of the '665 Patent with this "radiographic marker" limitation.

The broader aspect of reissue claims 11-17, 19 and 21-22 relates to this surrendered subject matter. In fact, it is identical to the surrendered subject matter. Reissue claims 11-17, 19 and 21-22 are broader than issued claims 1-10 because these reissue claims omit the "radiographic marker" limitation and therefore encompass templates that do not have a "radiographic marker." This is precisely the subject matter that the applicant surrendered during the original prosecution when claims 1 and 23 were amended to require the template to have a "radiographic marker." Therefore, the second step of the recapture test is satisfied. *See Mostafazadeh*, 643 F.3d at 1358.

### iii. Step 3 – Claims 11-17, 19 and 21-22 of the '368 Patent Are Not "Materially Narrowed" In a Way That Avoids the Recapture of the Surrendered Subject Matter.

The third step of the recapture test is to "determine whether the reissued claims were materially narrowed in other respects to avoid the recapture rule." *Pannu*, 258 F.3d at 1371. (citations omitted). Reissue claims violate the recapture rule unless the claims are "materially

narrowed in a way that avoids recapture of the surrendered subject matter." *Mostafazadeh*, 643 F.3d at 1361. "In discussing this third step, it is important to distinguish among the original claims (i.e., the claims before the surrender), the patented claims (i.e., the claims allowed after surrender), and the reissue claims." *Id*. at 1358. "If the scope of the reissue claim is the same as or broader than that of the canceled claim, then the patentee is clearly attempting to recapture surrendered subject matter and the reissue claim is, therefore, unallowable." *Clement*, 131 F.3d at 1469 (citation omitted). Importantly, "the recapture rule analysis is conducted on a limitation-by-limitation basis, so that narrowing limitations completely unrelated to the relevant limitation will not save a reissue claim from the recapture rule . . .." *Youman*, 679 F.3d at 1345 (citation omitted).

This third step of the recapture test is satisfied here. Reissue claims 11-17, 19 and 21-22 do not include any limitations that "materially narrowed" any of these claims "in a way that avoids recapture of the surrendered subject matter." *Mostafazadeh*, 643 F.3d at 1361 (citation omitted). Claims 11-17, 19 and 21-22 completely recapture the surrendered coverage of templates that do not have a "radiographic marker" because they omit the "radiographic marker" limitation altogether, and none of the limitations in any of these claims narrows the claim scope in a way that diminishes or avoids this recapture. Indeed, all of the limitations of claims 11-17, 19 and 21-22 are unrelated to the omitted "radiographic marker" limitation and instead relate to other, unrelated features of the template, including the modified "threaded" limitations that the patentee added to the claims and focused the examiner on during the reissue prosecution. All of these limitations are "completely unrelated to the relevant limitation," i.e. the omitted "radiographic marker" limitation, and therefore cannot "save [these] reissue claim[s] from the recapture rule." *Youman*, 679 F.3d at 1345. Indeed, there has been no narrowing at all related to the "radiographic marker" feature, and these reissue claims completely recapture the surrendered coverage of templates that do not have

a "radiographic marker." Thus, the third step of the recapture test is satisfied because these claims were not "materially narrowed in other respects to avoid the recapture rule." *Pannu*, 258 F.3d at 1371 (citation omitted).

Plaintiff cannot avoid the third step of the recapture test by adding the limitation "a removable guideway arranged at the removable portion" because it is unrelated to the surrendered subject matter. *See Mostafazadeh*, 643 F.3d at 1361 ("the narrowing limitations are unrelated to the surrendered subject matter and thus insufficient to avoid recapture."). Reissue claim 11 omits the "radiographic marker" limitation altogether, and therefore completely recaptures this surrendered subject matter. There has been no narrowing at all with respect to the "radiographic marker" limitation, and the narrowing with respect to the "a removable guideway arranged at the removable portion" limitation is "unrelated to the surrendered subject matter and thus insufficient to avoid recapture." *Mostafazadeh*, 643 F.3d at 1361; *see also In re Youman*, 679 F.3d 1335, 1345, 1347-48 (Fed. Cir. 2012).

In sum, reissue claims 11-17, 19 and 21-22 of the '368 Patent violate the rule against impermissibly recapturing previously surrendered subject matter under the Federal Circuit's three-step test. Therefore, all of these claims are invalid under 35 U.S.C. § 251 as a matter of law.

### iv. Reissue Claim 11 Is Not Directed to an "Overlooked Aspect" That Was "Not Originally Claimed" Because the "Unthreaded" Feature Was Within the Scope of the Original Application Claims

The "unthreaded" feature of claim 11 is not an "overlooked aspect" that was "not originally claimed." The Federal Circuit has made clear that "overlooked aspects" are "not merely incidental features of the originally claimed invention" but rather "additional inventions/embodiments/species not originally claimed." *In re General Electric Co.*, 789 Fed. Appx. 857, 860 (Fed. Cir. 2019) (emphasis added) (quoting *In re Mostafazadeh*, 643 F.3d 1353,

1360 (Fed. Cir. 2011)). Because an "overlooked aspect" is one that was "not originally claimed," an aspect of a reissue claim is not an "overlooked aspect" if it was "encompass[ed]" by or "within the scope of the originally filed claims." *General Electric*, 789 Fed. Appx. at 861.

The "unthreaded" feature of reissue claim 11 was plainly encompassed by and within the scope of at least original application claims 1 and 42 pursued during the original prosecution. As seen in Appendix B, original application claim 1 (Ex. C-1 at 25), issued claim 1 (Ex. B at 9:12-38), and reissue claim 11 (Ex. A at 10:41-63) all recite a "guideway" as part of the claimed template. Although *issued* claim 1 *further* recites that the guideway has an inner piece and an outer piece that are both threaded, and *reissue* claim 11 *further* recites that the guideway has an inner piece, as well as an outer piece that "engages" the removable portion (the "unthreaded" feature), *original application* claim 1 was not limited to either of these more specific configurations.

Original claim 1 did not include these additional limitations of issued claim 1 and reissue claim 11 and therefore encompassed the guideway configurations of both claims. *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) (en banc). Therefore, the "unthreaded" feature of reissue claim 11 was within the scope of original application claim 1 as well as original application claim 42, which recited "[t]he template of claim 1, wherein the guideway comprises an inner piece and an outer piece." Ex. C-6 at 6. Although *issued* claim 1 *further* recites that the inner and outer pieces are threaded (Ex. B at 9:12-38), and *reissue* claim 11 *further* recites that the outer piece engages the removable portion (the "unthreaded" feature) (Ex. A at 10:41-63), *original application* claim 42 was not limited to either configuration (Ex. C-6 at 6). Only original application claim 43, which depended from claim 42, required the inner and outer pieces to be threaded (which eventually ended up in issued claim 1, *see infra*). *Id.* at 6. In contrast, original application claim 42 did not include this limitation of claim 43, and therefore encompassed

a guideway with inner and outer pieces of any configuration, whether threaded or not. *See SRI Int'l.*, 775 F.2d at 1122; *Fromson*, 720 F.2d at 1570. Therefore, the "unthreaded" feature of reissue claim 11 was also within the scope of original application claim 42.

In sum, the "unthreaded" feature of reissue claim 11 was within the scope of at least original application claims 1 and 42, and is therefore not an "overlooked aspect" that was "not originally claimed," but rather is "merely [an] incidental feature of the originally claimed invention." *General Electric*, 789 Fed. Appx. at 860. Specifically, the applicant initially tried to obtain original application claim 1 that required a guideway. *See supra* and Ex. C-1 at 25. He also tried to obtain original application claim 42, which required an inner piece and an outer piece but did not require them to be threaded or unthreaded. *See supra* and Ex. C-6 at 6. The examiner repeatedly rejected claim 1 as unpatentable, even with various amendments (*see* Ex. C-6 at 3), and also rejected claim 42 as unpatentable. Ex. C-7 at 2, 4-5. However, the examiner indicated that original application claim 43, which required the inner and outer pieces to be threaded (Ex. C-6 at 6), would be allowable if rewritten in independent form. Ex. C-7 at 7. In response, the applicant acquiesced and amended claim 1 to incorporate the limitations of both claims 42 and 43, so that claim 1 required threaded inner and outer pieces. Ex. C-8 at 3, 7. It was only after claim 1 was amended in this manner that the examiner allowed it. Ex. C-9 at 5, 6. In sum, the applicant did not "overlook" the unthreaded feature—he tried to obtain claims covering this feature, but failed.

As a result, because claim 11 is not directed to an "overlooked aspect" that was "not originally claimed," the rule against recapture applies, and the Court does not need to also determine whether claim 11 is "patentably distinct." That separate requirement is moot because claim 11 does not meet the threshold requirement of being "not originally claimed." *See General Electric*, 789 Fed. Appx. at 861 (holding that the "narrowing limitation" of the reissue claims as

not an "overlooked aspect" because it was "within the scope of at least one original claim," and applying the recapture rule without also determining whether the claims are patentably distinct). The examiner did not explain his decision to withdraw the recapture and prior art rejections at all. Ex. D-6 at 3. Moreover, in the pending office action, the recapture rejection was based only on the omission of the "threaded" limitation from claim 11; there was no pending recapture rejection based on the omission of the "radiographic marker" limitation, because at that time claim 11 still included the "radiographic marker" limitation and the examiner had withdrawn claim 19. Ex. D-4 at 5-6, 9-11. In other words, at that time, claim 11 did not violate the recapture rule as to the "radiographic marker" limitation and had not been rejected on that basis. The applicant overcame the pending recapture rejection by amending claim 11 to require threads on the outer piece of the guideway but not the inner piece. Ex. D-5 at 4, 7-9. Then, after the examiner withdrew the rejections, the patentee amended claim 11 again to remove the "radiographic marker" limitation and move it to new dependent claim 25, without noting this to the examiner. Ex. D-7 at 16, 18, 19. In other words, the examiner had already withdrawn the rejections before the patentee impermissibly broadened claim 11 to recapture the coverage of templates without a "radiographic marker" that had been surrendered during the original prosecution.

**B.    The Complaint Should Be Dismissed In Its Entirety Because It Fails to State a Claim For Relief As to Any of the Claims of the '368 Patent.**

Because reissue claims 11-17, 19 and 21-22 are invalid, the entire complaint fails to state any claim for relief and should be dismissed with prejudice under Rule 12(b)(6).  As to claims 11-17, 19 and 21-22, the complaint fails to state a claim for relief because these claims are invalid under 35 U.S.C. § 251, as explained above.  As to the remaining claims 1-10, 18 and 20, the complaint fails to state a claim for relief because it does not plausibly allege infringement of any of these claims, as explained below.

18

Although the complaint specifically alleges infringement of invalid claim 11 (ECF No. 1, ¶¶ 18-25), it does not include any plausible allegation of infringement of any other claim, including claims 1-10, 18 and 20, all of which require the template to have a "radiographic marker." Specifically, the complaint merely includes conclusory allegations that "other claims" and "one or more claims" of the '368 Patent are infringed, without identifying any of these "other" claims, much less articulating why the accused products infringe any of these claims. (*Id.*, ¶¶ 3, 18, 30, 34.) Importantly, the complaint does not allege that the accused products have the "radiographic marker" required by claims 1-10, 18 and 20. This failure to allege facts that articulate why claims 1-10, 18, and 20 are infringed by the accused products falls well short of what is required to state a claim for relief as to these claims. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

No claim construction or expert testimony is required to decide this motion. As explained above, the recapture rule applies to claim 11 because it is, as a matter of law, within the scope of original application claims 1 and 42, and therefore is not directed to an "overlooked aspect" that was "not originally claimed." Separately, as explained above, the "a removable guideway arranged at the removable portion" limitation in claim 11 did not avoid the recapture because it is unrelated to the surrendered subject matter. No claim construction is required to reach either of these conclusions. Similarly, no obviousness analysis is required to decide this motion. Whether the recapture rule is violated is a question of law and there are no facts in dispute.  Thus, the recapture rule applies, and the Court does not need to determine whether claim 11 is "patentably distinct."

There are only two issues for the Court to decide: (1) whether the recapture rule applies, which turns on whether claim 11 is directed to an "overlooked aspect" that was "not originally claimed," i.e. not within the scope of original application claims 1 or 42; and (2) whether the "a

removable guideway arranged at the removable portion" limitation in claim 11 avoided the recapture. Neither issue involves any disputed facts, and both issues can be decided based solely on the undisputed claim language and prosecution history in the record. Thus, all the relevant facts have been proven by clear and convincing evidence, and there are no disputed facts that must be viewed in the light most favorable to Plaintiff. *Cf. Pannu*, 258 F.3d at 1370 (affirming summary judgment that reissue claims violated recapture rule because the "underlying facts … are taken directly from the prosecution histories and claims … and are not disputed").

Therefore, unless Plaintiff can demonstrate in response to this motion that it has a good faith basis to amend its complaint to plausibly allege that any of claims 1-10, 18 or 20 are infringed, a finding by the Court that claims 11-17, 19 and 21-22 are invalid under 35 U.S.C. § 251 would mean that the entire complaint fails to state any claim for relief. Therefore, the complaint should be dismissed with prejudice in its entirety under Rule 12(b)(6).

## I.     CONCLUSION

For the foregoing reasons, Defendant National Dentex Labs respectfully requests that the Court dismiss Plaintiff's complaint in its entirety with prejudice.

Respectfully submitted,

*/s/ Lucas T. Elliot*
Lucas T. Elliot
Attorney-In-Charge
Texas Bar No. 06534150
S.D. Fed. ID No. 12757
FROST BROWN TODD LLP
4400 Post Oak Parkway, Suite 2850
Houston, Texas 77027
713-590-9300 Telephone
713-590-9399 Facsimile
lelliot@fbtlaw.com

*Attorney for Defendant National Dentex Labs LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on July 17, 2023.

/s/Lucas T. Elliot
Lucas T. Elliot

0134522.0752503   4895-1105-9307